**In re RAM MANUFACTURING, INC., Debtor.**

**Bankruptcy No. 83–00101G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 11, 1985.

Thomas B. Rutter, Thomas B. Rutter, Ltd., Philadelphia, Pa., for debtor, Ram Mfg., Inc.

Kenneth F. Carobus, Morris & Adelman, P.C., Philadelphia, Pa. for Chase Commercial Corp.

Donald M. Collins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa. for successor trustee, Fred Zimmerman.

Fred Zimmerman, Successor Trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The threshold question in the instant case is whether an ostensible lease for a computer is only a security device for an installment lease contract. For the reasons expressed below we conclude that the docu-

ment at issue did not create a lease but rather a security interest on an installment sale.

The facts of this case are as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") on January 7, 1983, and two weeks later a trustee[2] was appointed. Approximately three years earlier the debtor and the Chase Commercial Corporation ("Chase") executed a document which was divided into two sections, the first of which was entitled "the lease," while the second was denominated "the option." Under the agreement the debtor was to "lease" a computer from Chase upon payment of $4,316.44 per month for 60 months, at the end of which time the debtor had the "option" to purchase the computer for $1.00. When the parties executed the document, and as of the hearing on this dispute, the projected fair market value of the computer at the end of the term was far in excess of the $1.00 option price and thus the $1.00 figure is nominal by comparison. To protect its rights in the computer Chase, in 1980, filed a financing statement in Bucks County, Pennsylvania, under the Uniform Commercial Code, but when the computer was moved to Montgomery County, Pennsylvania, in 1981, no new financing statement was filed in that county. Chase does not dispute that it currently has no perfected security interest in the computer. Prior to the filing of the petition the debtor defaulted under the agreement and this default gave rise to Chase's $180,325.58 claim against the debtor.

After the filing of the petition, Chase filed an application for an order compelling the trustee to adopt or reject the "lease," a motion for relief from the automatic stay so it could repossess the computer and a

proof of claim seeking a total of $180,325.68 plus $4,316.44 per month as administrative rent until the computer was surrendered to Chase. The trustee filed an objection to the proof of claim. At the time of the filing of Chase's application to compel adoption or rejection of the "lease," it and the trustee believed that the document at issue created a lease, and in reliance on those beliefs and with the consent of those parties we entered an order on March 10, 1983, fixing a time by which the trustee was to assume or reject the "unexpired lease." Without sanctioning the propriety of the procedure, we simply state that prior to the passage of the bar date the trustee moved for summary judgment on the issue that the document in question represented an installment sale contract rather than a lease. On the basis of the limited facts of record in the case at that time, we entered an order, accompanied by an opinion,[3] which denied the motion, since under the applicable standards we could not then conclude that the document was an installment sale contract rather than a lease.

In April of 1984 Chase executed an agreement with Television Technology Corporation ("Technology") whereby Technology rented the computer from Chase for $1,319.88 per month.[4] Since Chase contracted for the rental of the computer without relief from the stay, the debtor asserts that Chase is in contempt of court but there is inadequate proof for us to find that Chase's conduct was contumacious.

In large part the answer to the threshold question of whether the ostensible lease is actually a security device on an installment sale contract is provided by

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

**2.** We appointed Sam Alper as trustee but on his death we designated Fred Zimmerman as successor trustee.

**3.** *In re Ram Manufacturing, Inc.,* 38 B.R. 252 (Bankr.E.D.Pa.1984).

**4.** We were previously led to believe that the computer had been sold and the proceeds placed in escrow and we so stated as much in our opinion denying the trustee's motion for summary judgment. 38 B.R. 252, 253. As the testimony unfolded at a recent hearing on this matter, we found that the parties had agreed to the sale and the creation of an escrow account, but the sale was never consummated.

New Jersey's Uniform Commercial Code[5] which provides in pertinent part:

(37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (12A:2–401) is limited in effect to a reservation of a "security interest". * * Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (12A:2–326). · *Whether a lease is intended as security is to be determined by the facts of each case; however,* (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and *(b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.*

N.J.Stat.Ann. 12A:1–201(37) (emphasis added). We having found that the $1.00 option price for the purchase of the computer was nominal, it appears that the so called lease is actually a security device on an installment sale contract. Chase has hoped to circumvent such a conclusion by asserting that the trustee is bound by his earlier admission in this dispute that the document between the debtor and Chase was a true lease. The admission was embodied in a stipulation between Chase and the trustee which was subsequently approved by us. Chase contends that the facts on which the parties agreed in the stipulation are binding on the trustee as judicial admissions. It correctly states that the facts posited in a court approved stipulation bind the parties who have lent their names to the document and remove from dispute facts contained therein. *See, e.g., Giannone v. United States Steel Corp.,* 238 F.2d 544,

547 (3d Cir.1956). Nonetheless, a "court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 24 (4th Cir.1963), *cert. den.* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964). Here, Chase, possibly through mere inadvertance, initially provided the trustee with only the "lease" and not the "option" agreement which contained the $1.00 purchase figure. Only later did the trustee learn of the nominal option price at which time he began asserting that the document at issue was not a lease. To hold the trustee to that aspect of the stipulation would allow Chase to benefit from its error of omission in failing to provide the trustee with the pertinent documentation. Since the trustee was laboring under a mistake of fact spawned by Chase, we will deem that portion of the stipulation a nullity at which the parties state that the document at issue was a lease.

■ Chase contends that under the doctrine of *res judicata* and collateral estoppel we are bound by our order of March 10, 1983, by which we established a bar date by which the trustee was to assume or reject the "unexpired lease." Chase's position is without merit since it "is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1392, 75 L.Ed.2d 318 (1983).

The only doctrine of which we are aware that may constrain us from modifying an order previously entered in the *same* case or proceeding is "law of the case" on which the Supreme Court has stated:

Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly de-

---

**5.** The document at issue provided that New Jersey law governs the resolution of disputes arising under that agreement and the parties concur that New Jersey law should be applied in this case.

fined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. See 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶0.404 (1982) (hereinafter Moore). Law of the case directs a court's discretion, it does not limit the tribunal's power. *Southern R. Co. v. Clift*, 260 U.S. 316, 319 [43 S.Ct. 126, 126, 67 L.Ed. 283] (1922); *Messenger v. Anderson*, 225 U.S. 436, 444 [32 S.Ct. 739, 740, 56 L.Ed. 1152] (1912).

Id., 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (footnote omitted). Thus, the doctrine of law of the case does not preclude us from reaching a conclusion different from that in our March 10 order, if the interests of justice so require. Since Chase has failed to present any convincing arguments that militate against the application of the clear language of N.J.Stat. Ann. 12A:1–201(37), in light of that language we conclude that the document at issue evidences an installment sale contract. This result compels us to deny Chase's application for an order fixing the time the trustee must assume or reject the lease since there is no lease.

■ An installment sale of personalty is subject to the provisions of Article 9 of the Uniform Commercial Code. N.J.Stat.Ann. 12A:9–102(2). Although Chase's interest in the computer under the contract was initially perfected under Article 9, that protection has lapsed. Consequently, Chase has merely an unperfected security interest in the computer and thus, necessarily, Chase's claim in this proceeding is unsecured. Since the debtor's use of the computer had been predicated on an installment sale contract rather than a lease, no rent accrued in favor of Chase during either the prepetition or postpetition period. Ergo, that portion of Chase's proof of claim that asserts entitlement to an administrative priority for postpetition rent, is without foundation and will be stricken.

■ The next issue for resolution is the debtor's request for judgment in its favor against Chase in an amount equal to the rent on the computer Chase has received from Technology. The debtor asserts that since its entitlement to the computer is based on what we have determined is an installment sale contract rather than a lease, the debtor, rather than Chase, is the proper party to lease the computer and reap the economic benefit of such an arrangement. Other than its assertion that the document at issue created a lease, Chase has offered no argument to undermine the debtor's position and, consequently, on this aspect of the case we will enter judgment in favor of the debtor. Due to the continuing accrual of the monthly rental we are unable at this time to enter a sum certain on this claim, and we will enter this aspect of the judgment without such a sum but grant the trustee leave to move within ten days to amend the judgment, to include a fixed amount on the outstanding debt. The trustee has also requested attorney fees for the recovery of this sum, but no basis for such an award has been advanced and none is apparent to us, so that request will be denied.

The penultimate issue before us for decision is whether Chase is entitled to relief from the automatic stay that was imposed upon the filing of the petition. Chase requests this relief so it may take possession of the computer. The request for such relief was made on the allegation that the trustee has failed to pay postpetition rent on the computer. Since we concluded that the ostensible lease was actually an installment sale contract for which there is no effective filing under Article 9 of the Uniform Commercial Code, Chase's position is without merit and its request for relief on this issue will be denied.

■ Lastly, the trustee charges that Chase should be held in contempt of court for leasing the computer to Technology without us granting relief from the automatic stay. Although contempt is one means of redressing such conduct by a creditor, the power of contempt should generally be reserved for action evincing a contumacious frame of mind. *Ramage v. Ramage* (In re Ramage), 39 B.R. 37, 39

(Bankr.E.D.Pa.1984). We found above that there was inadequate proof of contumacity, and therefore we conclude that there is no contempt.

We will enter an order accordingly.